IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 7, 2014

**KELVIN REED v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 07-05352     James C. Beasley, Jr., Judge**

**No. W2012-02533-CCA-R3-PC  - Filed April 10, 2014**

The Petitioner, Kelvin Reed, appeals as of right from the Shelby County Criminal Court's dismissal of his petition for post-conviction relief. The Petitioner contends that his trial counsel was ineffective (1) for failing to obtain an expert witness to testify regarding a 911 recording; and (2) for failing to "effectively address the issue of the lack of blood on the Petitioner's person and possessions." Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and ROGER A. PAGE, JJ., joined.

Varonica R. Cooper, Memphis, Tennessee, for the appellant, Kelvin Reed.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Amy P. Weirich, District Attorney General; and Stacy M. McEndree, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

In 2009, the Petitioner was convicted of first degree premeditated murder and aggravated burglary and received an effective sentence of life imprisonment. See State v. Kelvin Reed, No. W2009-00589-CCA-R3-CD, 2010 WL 4544777 (Tenn. Crim. App. Nov. 10, 2010), perm. app. denied, (Tenn. Mar. 9, 2011). The evidence at trial established that the victim, Dorothy Jamison, had recently separated from the Petitioner, whom she had dated and lived with for several years. Id. at *1. Despite their breakup, the Petitioner would

"frequently" call the victim's cell phone and visit her home, though "the victim never allowed [the Petitioner] into the home." Id. It was also established at trial that the Petitioner went by the name "Teddy" rather than his given name. Id.

During the early morning hours of November 5, 2006, the victim's nine-year-old daughter awoke to the sound of "hollering." Reed, 2010 WL 4544777, at *2. She saw the Petitioner in the hallway with his arm around the victim's neck and a gun pointed at her. The Petitioner then dragged the victim into the kitchen. The victim's daughter waited until she heard the Petitioner leave and went to the kitchen where she found her mother with multiple gunshot wounds. At trial, the victim's daughter identified the Petitioner as her mother's killer. A 911 call made by the victim was played for the jury in which "a female voice is heard screaming" and repeatedly pleading, "Please, Teddy, please," followed by several gun shots. Id.

The front door of the home appeared to have been forced open, and there was evidence of a fight in the living room. Reed, 2010 WL 4544777, at *2. There were also "blood smears and gunshot damage in the hallway and on the walls" suggesting that the victim was bleeding and "moving through" the home. Id. A warrant was issued for the Petitioner's arrest, and he turned himself in to the police a few hours after the victim's death. Id. at *3. The Petitioner's car was impounded, and the victim's blood was found "on the driver's side exterior door handle." Id.

The Petitioner's cell phone records revealed that he had made fifty-seven calls to the victim in the twenty-four hours prior to her death. Reed, 2010 WL 4544777, at *3. The last phone call was made at 2:27 a.m. and lasted twenty-seven minutes. At 2:46 a.m., one of the Petitioner's friends called his cell phone, and the call was "received using a cell tower located within close proximity to the victim's apartment." Id. On direct appeal, this court affirmed the Petitioner's convictions but remanded the case for the correction of a typographical error on the Petitioner's judgment forms. Id. at *1. Our supreme court declined to review this court's opinion.

The Petitioner filed a timely pro se petition for post-conviction relief, counsel was appointed to represent the Petitioner, and an amended petition was filed. At the post-conviction hearing, the Petitioner denied that he killed the victim and claimed that they were still dating at the time of her murder but that he had never been to her home. The Petitioner testified that a man's voice could be heard on the 911 call saying, "Where that n----r at." The Petitioner claimed that he asked trial counsel to hire an expert to analyze the 911 call and compare his voice to the man's voice on the call but that trial counsel failed to do so. The Petitioner did admit that the victim could be heard on the call pleading with "Teddy" not to

shoot her. The Petitioner also admitted that the victim's daughter had lived with him for most of her life and that she identified him as the victim's killer at trial.

The Petitioner testified that he also felt that trial counsel failed to properly address the lack of blood on his person and in his car when he was arrested. The Petitioner claimed that the "whole house [was] bloody" but that he did not have any blood on his clothes. The Petitioner also testified that only "a speck" of the victim's blood was found on his car's door handle and that there was testimony at trial that it had been there for six months and could have been caused by the victim pricking her finger on the handle. The Petitioner admitted that there was testimony at trial that the victim had driven his car in the past. However, the Petitioner claimed that trial counsel failed to adequately address these facts at trial.

Trial counsel testified that he retained an expert in voice analysis to examine the recording of the 911 call and to compare the male voice to the Petitioner's voice. According to trial counsel, the expert conducted a preliminary evaluation of the call and enhanced the recording. In doing so, the expert discovered that the victim could also be heard using the Petitioner's given name of Kelvin while she was pleading for her life. Trial counsel testified that he had not noticed this when he listened to the 911 call and that he believed the State was unaware of it as well. Trial counsel further testified that the expert "was very discouraging as far as [] doing any further testing" because he believed further analysis would only confirm that it was the Petitioner's voice on the 911 call.

Trial counsel testified that he discussed the issue with his colleagues at the District Public Defender's Office and decided not to have the expert conduct the voice comparison. Trial counsel did not call the expert as a witness at trial because he did not want the jury to know about the victim using the Petitioner's given name during the 911 call. Trial counsel testified that he felt that would only further the State's case. Trial counsel admitted that, in hindsight, he wished that he had the expert do the voice comparison anyway so it would not have become a post-conviction issue but that he doubted a full analysis would have changed the outcome of the Petitioner's case. Trial counsel also testified that he had no regrets about how he handled the Petitioner's case.

Trial counsel testified that he recalled that there was no blood on the Petitioner and only "a very small speck" found on the Petitioner's car. Trial counsel was "sure" he argued about the lack of blood at trial and during his closing argument because he had talked to the Petitioner about it "quite a bit" and because he "didn't have that much [else] to argue." When asked if he thought he "could have hammered on that point a little bit better at trial," trial counsel responded that he did not know "how other than bringing out the fact that [there] was the only speck of blood."

The post-conviction court issued a written order dismissing the petition for post-conviction relief.[1] The post-conviction court stated that it was "satisfied that trial counsel explored the possibility of attacking the tape [of the 911 call] and discovered that it was not in his client's best interest to put on the expert [at trial]." The post-conviction court further noted that the "facts of the case were strong for the [State] and with the analysis of the enhanced tape they got stronger." The post-conviction court concluded that trial counsel "was not ineffective in the trial strategy that he chose." With regard to the blood evidence, the post-conviction court concluded that the issue was without merit, stating that it had "reviewed the [trial] transcript and note[d] that witnesses were properly cross-examined and that [trial] counsel did point out to the jury the lack of blood on the [P]etitioner [and] his vehicle."

ANALYSIS

The Petitioner contends that the post-conviction court erred in dismissing his petition for post-conviction relief. The Petitioner argues that trial counsel was ineffective for failing to continue the analysis on the 911 call and for not calling the expert witness to testify at trial. The Petitioner further argues that the voice comparison would have established his innocence.[2] The Petitioner also argues that trial counsel "failed to effectively address the issue of the lack of blood on the [P]etitioner's person and possessions." The State responds that, given the expert's discovery of the use of the Petitioner's given name during the 911 call, trial counsel made a sound strategic decision to discontinue the analysis and to not call the expert at trial. The State further responds that trial counsel raised the issue of the lack of blood on the Petitioner during his cross-examination of the State's forensic witnesses and during his closing argument.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450,

---

[1]The Petitioner's pro se and amended petitions raised several other issues. The post-conviction court denied post-conviction relief on those issues as well. However, the Petitioner has not raised those issues in his appellate brief; therefore, he has waived review of those issues in this court.

[2] The Petitioner argues that he should not be faulted for failing to present a voice analysis expert witness at his post-conviction hearing because there is no funding provided for an indigent petitioner to secure such an expert for post-conviction proceedings. However, after "careful consideration of the cases and constitutional provisions" our supreme court has held that "the state is not required to provide expert assistance to indigent non-capital post-conviction petitioners." Davis v. State, 912 S.W.2d 689, 696-97 (Tenn. 1995).

456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In determining whether trial counsel's performance was deficient, this court has held that a "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). "[D]eference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). An attorney's performance must be measured against the general standard of whether the services rendered were "within the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).

With respect to the 911 call, trial counsel made a reasonably based strategic decision to discontinue the analysis and not to call the expert witness he had retained. We agree with the post-conviction court's assessment that the expert's findings would have likely bolstered an already strong case against the Petitioner. The revelation that the victim used the Petitioner's given name in pleading for her life would have made the enhanced version of the 911 call more damning than the version played for the jury. Furthermore, the Petitioner cannot show prejudice on this issue given the overwhelming evidence of his guilt. The victim's daughter, who had lived with the Petitioner for most of her life, identified him as the killer at trial. Additionally, the victim was heard on the 911 call repeatedly saying, "Please, Teddy, please," as she pleaded for her life.

With regard to the lack of blood on the Petitioner and his car, it was established at the post-conviction hearing that trial counsel raised this issue at trial. The Petitioner himself admitted that trial counsel pointed out that only "a small speck" of the victim's blood was found on the Petitioner's car and that there was no blood on his clothing and personal items found in the car. Furthermore, trial counsel established during cross-examination that the blood found on the Petitioner's car could have been there for weeks or months before the shooting. Trial counsel also addressed this issue during his closing argument. The Petitioner argues that the outcome of his case would have been different had trial counsel "hammered" this issue more during trial. However, we cannot conclude that trial counsel's performance was deficient simply because the jury rejected this evidence in favor of the overwhelming evidence of the Petitioner's guilt. Accordingly, we conclude that the post-conviction court did not err in dismissing the petition for post-conviction relief.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE